IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

KELLY JAMES CLARK,               )
     Petitioner,               )     Case No. 7:23-cv-00223
v.                               )
                                )     By: Michael F. Urbanski
CHADWICK S. DOTSON,[1]           )     Chief United States District Judge
     Respondent.               )

## MEMORANDUM OPINION

Kelly James Clark, a Virginia inmate represented by counsel, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petition challenges the validity of Clark's 2019 convictions in the Circuit Court of Louisa County. The respondent has moved to dismiss the petition. Clark has not responded to the motion to dismiss, and the time for doing so has expired. After reviewing the record, the court concludes that the motion to dismiss must be granted.

## I.     Background

On April 25, 2019, a jury convicted Clark of attempted second degree murder, in violation of Virginia Code § 18.2-32; attempting to disarm a law enforcement officer engaged in the performance of his public duties, in violation of Virginia Code § 18.2-57.02; and assaulting a law enforcement officer, in violation of Virginia Code § 18.2-57(C). By order dated June 27, 2019, the trial court sentenced Clark to a total term of imprisonment of thirteen years.

---

[1] Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases, "the petition must name as respondent the state officer who has custody" of the petitioner. That officer is Chadwick S. Dotson, the current Director of the Virginia Department of Corrections. Thus, Dotson is the proper respondent, and the Clerk shall update the docket accordingly.

Clark appealed his convictions to the Court of Appeals of Virginia. A three-judge panel of the appellate court denied his petition for appeal on July 30, 2020. Clark then filed a petition for appeal in the Supreme Court of Virginia, which was refused on April 15, 2021.

On September 1, 2021, Clark filed a habeas petition in the Supreme Court of Virginia, raising two claims of ineffective assistance of counsel:

> a. Trial counsel failed to move to strike each charge on the ground that the evidence was insufficient to establish the element of intent, or the element of knowledge or reason to know, due to Clark's actions and behavior being the result of him suffering a diabetic episode.

> b. Trial counsel failed to voir dire jurors on whether they were related to or had any association with law enforcement and whether that relationship or association would impact their ability to be impartial.

HR[2] at 20–21. The Supreme Court of Virginia denied the petition on December 1, 2022. In its decision, the Supreme Court of Virginia summarized the trial evidence as follows:

> The record, including the trial transcript, demonstrates that about 3:00 a.m. on December 26, 2016, Deputy Glenn Payne was dispatched to investigate a reported car crash on a rural stretch of road. Payne was in uniform and driving a marked police car and he had activated his flashing lights before arriving at the scene of the crash. At the scene, Payne saw a crashed car in the yard of a residence and petitioner bent over in the road near the car. It appeared the car had failed to negotiate a turn, which Payne concluded was likely because it was going too fast. Petitioner, who was wearing long pants, a shirt, a thick winter jacket, and a stocking cap, was saying "help me" when Payne stepped out of his car.

> When Payne approached, petitioner stood up and ran away toward a wooded area nearby. Deputy Payne did not follow petitioner into the woods because it was dark, he was alone, he was concerned petitioner was under the influence, and he was therefore concerned for his own safety. Eventually, Deputy Payne located petitioner, who had returned to the roadway, and tried to talk to him. This was captured on Payne's

---

[2] References to the habeas record in <u>Clark v. Clarke</u>, No. 210837 (Va. Sup. Ct.), are abbreviated "HR," followed by the page number in the lower left corner of each page.

2

body camera and shown to the jury during trial. Petitioner said "Y'all got me. When Payne asked what he meant by that, petitioner said "Y'all got the gun. Y'all did that shit, put that shit in my cigarette." Payne asked petitioner to clarify what he was saying, but petitioner said, "Got me fucked up!" Payne testified he believed these statements may have meant that petitioner was under the influence of drugs or alcohol when he crashed his car and that he knew he was going to be arrested for driving while intoxicated or under the influence of drugs.

Petitioner's demeanor then changed, and he said to Payne "hey, I'm right here man." It appeared to Payne as if petitioner was "posturing" and "didn't want to deal with it anymore." In response, Deputy Payne commanded petitioner to raise his hands and petitioner complied. As Payne approached petitioner with the intention of detaining him for further questioning, petitioner's eyes moved toward Payne's weapon and petitioner lunged forward, grabbing at the firearm holster at Payne's waist. Petitioner had both hands on either side of Payne's holster as the two men struggled.

Payne testified his holster secured the firearm first by a switch at the top, which released the "bail" to "pop" open, and second by a button, which must be pressed down with a finger as the firearm was removed from the holster. During the initial lunge, petitioner had hit the first switch and Payne testified he feared petitioner would be able to get to the second button. To prevent this, Payne used both of his hands to "push down" on the gun to keep it in the holster. Payne began spinning around and was able to wrestle the holster out of petitioner's grip. Payne knocked petitioner down to the ground away from him. Petitioner attempted to get up off the ground and run toward Payne. While petitioner was struggling [to] get up, he yelled three times that he was going to kill Payne. Payne testified he was fearful of petitioner getting to his weapon, and he did not think his Taser would be effective due to petitioner's thick jacket, and that he also did not think "spraying him" would be effective, so as petitioner was lunging toward Payne threatening to kill him, Payne drew his gun and shot petitioner. Payne estimated petitioner was between three and five feet away when he fired.

Dr. David Burt, the physician who treated petitioner for his gunshot wound, testified the intake nurse had recommended petitioner be tested for drugs upon his admission based on her observations of his behavior. The physician admitted urine was never collected, and a drug test was never done because petitioner had life-threatening injuries that took priority over collecting samples for a drug test.

3

Dr. Burt, after being accepted as an expert in emergency medicine, also testified about his experience treating individuals with diabetes who require emergency treatment. Dr. Burt testified diabetics are unable to process and utilize sugar, or glucose, and keep it within normal boundaries. A normal blood glucose level is between 80 and 120, and when a person consistently has a blood glucose level over 120, they are generally considered to be either diabetic or prediabetic. High blood sugar is referred to as hyperglycemia, while low blood sugar is hypoglycemia. When a person's blood sugar is dangerously low, it can impact brain function and the individual can become unresponsive or present as if they have had a stroke. Symptoms include slurred speech, stumbling, or lack of function of a part of the body, such as an arm. When a person's blood pressure is too high, in the 300 to 600 range, as opposed to too low, their vision may become blurry, they may have problems with urination, and they may become thirsty or tired. If the blood sugar reaches the 1000 to 1400 [range], the individual may become comatose.

Dr. Burt testified he reviewed petitioner's medical records from the date of the offense. At approximately 4:11 a.m., the hospital drew petitioner's blood. His blood glucose level was high, measuring between 430 and 480. Dr. Burt explained a person with chronically high blood sugar might feel normal in this range, or they could have increased thirst and urination, foggy vision, and feel sleepy. Dr. Burt opined it would be unlikely for petitioner's blood glucose level to make him combative. He further testified it would be unusual for a person's blood glucose level to be driven dangerously low without medication, such as insulin. Dr. Burt acknowledged a gunshot wound could cause a person's blood glucose level to increase. Dr. Burt testified that, while at the hospital, petitioner was diagnosed with hyperglycemia and prediabetes. He was treated with insulin to lower his blood sugar level and, in the week he remained at the hospital, his blood sugars were never low and remained slightly high. In addition, the doctor testified petitioner did not have head trauma from the crash.

After the Commonwealth rested its case, petitioner moved to strike the evidence, arguing, in relevant part, the Commonwealth had failed to demonstrate "an act towards the commission" of the killing of Deputy Payne. Petitioner went on to argue that simply grabbing for the gun did not rise to the level of attempting to cause Payne serious bodily injury. The court overruled the motion, stating that the jury could reasonably interpret petitioner's attempt to get Payne's gun to be an overt act toward commission of "some malicious purpose."

4

Petitioner's counsel presented evidence from petitioner's former employer that in the months leading up to the attack on Deputy Payne petitioner had been acting so strangely that he was given a drug test, which was negative. In addition, petitioner's wife and daughter testified he had not been feeling well on December 25. His daughter testified she had helped him take his blood glucose readings three times that day and that it had been low each time.

In addition, Dr. Alexander Salomon testified he treated petitioner for diabetes in 2015. He testified petitioner's behavior toward Deputy Payne was consistent with low blood sugar and that being shot would have caused his blood sugar to shoot up dramatically. On cross-examination, the doctor admitted he had diagnosed petitioner with hyperglycemia, that his blood sugar remained high at a follow-up appointment, and that at no point had petitioner been diagnosed with hypoglycemia. He further acknowledged many of petitioner's symptoms could be attributable to cocaine use.

Prior to closing argument, counsel renewed his motion to strike, incorporating his previous arguments. The court denied the motion. Counsel then argued to the jury that petitioner lacked the requisite intent as to each of the offenses because of his diabetes.

HR at 2715–2719.

On or about April 22, 2023, Clark filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. He asserts the same claims of ineffective assistance raised in his state habeas petition:

Ground I: Trial counsel failed to move to strike each charge on the ground that the evidence was insufficient to establish the element of intent, or the element of knowledge or reason to know, due to Clark's actions and behavior being the result of him suffering a diabetic episode.

Ground II: Trial counsel failed to voir dire jurors on whether they were related to or had association with law enforcement and whether that relationship or association would impact their ability to be impartial.

Pet.'s Mem. Supp. Pet., ECF No. 2, at 12–13.

## II.      Standards of Review

A court "shall entertain an application for a writ of habeas corpus" filed by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is generally required to exhaust all state court remedies before filing a habeas petition under § 2254. Id. § 2254(b). "Once a state prisoner has exhausted his claims in state court and filed a federal habeas petition, if a state court has already resolved the merits of a claim for post-conviction relief, a federal court may not grant a writ of habeas corpus under § 2254 unless the state court's decision meets the requirements of § 2254(d)." Williams v. Stirling, 914 F.3d 302, 311 (4th Cir. 2019) (internal quotation marks, brackets, and citation omitted).

Pursuant to § 2254(d), a federal court may grant relief with respect to a claim adjudicated on the merits in state court only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding," id. § 2254(d)(2). "In order for a federal court to find a state court's application of [Supreme Court] precedent unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citation omitted). Similarly, "[f]or a state court's factual determination to be unreasonable under § 2254(d)(2), it must be more than merely incorrect or erroneous. It must be sufficiently

against the weight of the evidence that it is objectively unreasonable." Winston v. Kelly, 592

F.3d 535, 554 (4th Cir. 2010) (citing Schriro v. Landrigan, 550 U.S. 465, 474 (2007)).

"When a state prisoner seeks § 2254 relief for ineffective assistance of counsel, [courts]

apply the 'highly deferential' Strickland standard." Crockett v. Clarke, 35 F.4th 231, 242 (4th

Cir. 2022) (quoting Owens v. Stirling, 967 F.3d 396, 412 (4th Cir. 2022)). In Strickland v.

Washington, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for evaluating

claims of ineffective assistance in violation of the Sixth Amendment. "First, the petitioner

must show counsel's performance was deficient and fell below an objective standard of

reasonableness." Crockett, 35 F.4th at 242 (citing Strickland, 466 U.S. at 687–88). "Second,

the petitioner must show prejudice, meaning 'there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.'" Id.

(quoting Strickland, 466 U.S. at 694). The court may conduct the analysis in either order and

need not consider both prongs if one is not satisfied. See Strickland, 466 U.S. at 697 ("If it is

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,

which we expect will often be so, that course should be followed.").

When assessing a claim of ineffective assistance through the lens of § 2254(d), the

court's review is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see

also Woods v. Etherton, 578 U.S. 113, 117 (2016) ("[F]ederal courts are to afford 'both the

state court and the defense attorney the benefit of the doubt.'") (quoting Burt v. Titlow, 571

U.S. 12, 22 (2013)). "This double-deference standard effectively cabins [a federal court's]

review to a determination of 'whether there is any reasonable argument that counsel satisfied

Strickland's deferential standard.'" Morva v. Zook, 821 F.3d 517, 528 (4th Cir. 2016) (quoting

Harrington v. Richter, 562 U.S. 86, 105 (2011)).

### III.    Discussion

#### A.  Ground I: Motion to Strike

In his first ground for relief, Clark claims that trial counsel provided ineffective

assistance by failing to move to strike each charge on the basis that the evidence was

insufficient to establish that Clark had the requisite knowledge or intent. To obtain convictions

for attempted second degree murder and attempted disarming of a law enforcement officer,

the Commonwealth was required to prove that Clark had the intent to commit those crimes.[3]

Goodson v. Commonwealth, 22 Va. App. 61, 74, 467 S.E.2d 848, 855 (Va. Ct. App. 1996). To

obtain a conviction for assault and battery of a law enforcement officer, the Commonwealth

was required to prove that Clark knew or had reason to know that Deputy Payne was a law

enforcement officer. Va. Code Ann. § 18.2-57(C). Clark argues that his "entire defense hinged

on his actions and behavior being the result of him suffering a diabetic episode, thus negating

the elements of intent and of Clark knowing or should have known," and that "a reasonably

competent trial counsel would have properly challenged the sufficiency of the evidence on

these crucial elements in a motion to strike." Pet.'s Mem. Supp. Pet. at 17.

---

[3] Second degree murder requires a showing of malice. Essex v. Commonwealth, 228 Va. 273, 280–81, 322 S.E.2d 216, 219 (Va. 1984). Specifically, "the defendant must be shown to have willfully or purposefully, rather than negligently, embarked upon a course of wrongful conduct likely to cause death or great bodily harm." Id. To obtain a conviction for disarming a law enforcement officer, the Commonwealth must prove that the defendant knew or had reason to know that a person was a law enforcement officer engaged in the performance of his official duties and, "with the intent to impede or prevent . . . such person from performing his official duties, knowingly and without the person's permission remove[d] a chemical irritant weapon or impact weapon from the possession of the officer or deprive[d] the officer of the use of the weapon." Va. Code Ann. § 18.2-57.02.

Clark asserted the same claim in his state habeas petition, and the Supreme Court of Virginia concluded that the claim failed to satisfy either prong of the <u>Strickland</u> test for ineffective assistance of counsel. The Supreme Court of Virginia reasoned as follows:

> Under the circumstances, counsel could reasonably have determined the Commonwealth's evidence, including that Deputy Payne was in a marked patrol car and wearing his uniform, petitioner's comments that the Deputy had "got him," petitioner's compliance with the deputy's command to put his hands up, petitioner's attempt to forcibly take the deputy's gun and threats to kill him, and Dr. Burt's testimony that neither low nor high blood sugar would cause the sort of aggressive behavior petitioner displayed toward the deputy, was sufficient to present a jury question as to petitioner's intent and knowledge. Accordingly, counsel could reasonably have determined a motion to strike on the grounds that the evidence was insufficient as a matter of law to prove intent or knowledge would have been futile and that any argument that the Commonwealth's evidence as to knowledge and intent should not be credited should be argued to the jury during closing argument. <u>See</u> <u>Lawlor v. Commonwealth</u>, 285 Va. 187, 223 (2013) ("A motion to strike challenges whether the evidence is sufficient to submit the case to the jury."); <u>see also</u> <u>Correll v. Commonwealth</u>, 232 Va. 454, 470 (1987) (counsel not ineffective for failing to make a meritless objection). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

HR at 2719.

Applying the "doubly deferential" standard for reviewing <u>Strickland</u> claims brought under § 2254," <u>Knowles</u>, 556 U.S. at 123, the court concludes that the Supreme Court of Virginia did not unreasonably apply <u>Strickland</u> or base its decision on an unreasonable determination of the facts. Deputy Payne testified that he was "in uniform displaying [his] badge of authority" when he encountered Clark on December 26, 2016, and that Clark made statements suggesting that he thought the deputy was going to arrest him. HR at 148, 156–158. Deputy Payne further testified that Clark looked directly at his holstered firearm before

lunging for it and placing both hands on the firearm, and that Clark "said that he was going to kill [Deputy Payne] three times" before Deputy Payne shot him. Id. at 158, 162–67. The Commonwealth also elicited testimony from Dr. David Burt that undercut Clark's theory that his actions resulted from a diabetic episode. Dr. Burt, who treated Clark in the emergency room following the shooting, testified that Clark had a blood glucose reading of 453, which he characterized as being "high blood sugar." Id. at 222. Dr. Burt explained that "people with high blood sugar . . . might feel normal if they're used to it for a long time," or they "might feel thirsty and tired and go[] to the bathroom a lot." Id. at 223. He opined that it would be "unlikely" for someone with a blood glucose reading of 453 to "fight[]" or "be[] combative." Id.

Based on the evidence presented by the Commonwealth, it was not objectively unreasonable for the Supreme Court of Virginia to conclude that Clark's claim of ineffective assistance failed to satisfy either prong of the Strickland test. The court agrees with the state court that trial counsel could have reasonably believed that there was enough evidence to present a jury question as to Clark's knowledge and intent, and thus that moving to strike the charges on the grounds asserted by Clark would have been futile. Likewise, the Supreme Court of Virginia reasonably determined that there was no reasonable probability that a motion to strike would have been granted or that Clark's argument, if preserved, would have been successful on appeal. Accordingly, Clark's first ground for relief must be dismissed.

### B. Ground II: Voir Dire

In his second ground for relief, Clark claims that trial counsel provided ineffective assistance by failing to "investigate and/or voir dire jurors on whether they were related to or

had any association with law enforcement and whether that relationship or association would impact their ability to be impartial." Pet.'s Mem. Supp. Pet. at 24. Clark asserts that "[h]ad trial counsel done so, he would have discovered that [Juror Harper] was the father to [Louisa County Sheriff's Deputy Captain David Harper], which would have resulted in the juror being stricken for cause." Id. at 24–26.

Clark raised the same ground for relief in his state habeas petition. In response to this claim, the respondent submitted a letter from the Commonwealth's Attorney indicating that an individual by the name of "Willie C. Harper" served on the jury who, according to a trial court document, was 54 years old and worked as a nuclear engineer. HR at 2709. The letter also indicated that the Commonwealth's Attorney had confirmed with Captain David Harper that his father's name is "Willie L. Harper" and that his father is "much older than 54 and not a nuclear engineer." Id. In addition to the letter, the respondent submitted an affidavit signed by David Harper attesting to the fact that his father's name is "Willie L. Harper." Id. at 2711. The respondent also submitted Wille L. Harper's affidavit averring that he did not serve on the jury in Clark's case. Id. at 2712.

Based on the evidence presented by the respondent, the Supreme Court of Virginia held that Clark's claim failed to satisfy the prejudice prong of the Strickland test. The court found that the record established that "the juror in question, Willie C. Harper, is not, as petitioner asserts, Captain Harper's father." Id. at 2720. Thus, the Supreme Court of Virginia concluded that Clark had "failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different." Id.

Clark has not pointed to any evidence suggesting that the Supreme Court of Virginia based its decision on an unreasonable determination of the facts. Nor has he shown that the decision involved an unreasonable application of clearly established law. Accordingly, Clark's second ground for relief must be dismissed.

## IV.    Conclusion

For the reasons stated herein, the court will grant the respondent's motion to dismiss and dismiss Clark's petition. Additionally, because Clark has not "made a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. 28 U.S.C. § 2253(c)(3)(2). An appropriate order will be entered.

Entered: February 1, 2024

Michael F. Urbanski
Chief U.S. District Judge
2024.02.01 17:16:05
-05'00'

Michael F. Urbanski
Chief United States District Judge